# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE I and JANE DOE II, on behalf of themselves and all others similarly situated, | Case No. 2:20-cv-00359-MJH |
| *Plaintiffs*, | Hon. Marilyn J. Horan |
| v. | Electronically Filed |
| UPMC, a Pennsylvania Nonprofit, Non-Stock Corporation, | |
| *Defendant*. | |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND**

**TABLE OF CONTENTS**

I.     PLAINTIFFS ARE ENTITLED TO REMAND UNDER THE HOME STATE EXCEPTION TO CAFA ................................................................................1

    A.  PLAINTIFFS ARE ENTITLED TO A REBUTTABLE PRESUMPTION OF CITIZENSHIP.................................................................................................2

    B.  PLAINTIFFS' EVIDENCE PROVES THAT TWO-THIRDS OF THE PENNSYLVANIA-RESIDENT CLASS ARE PENNSYLVANIA CITIZENS ...............................................................................................4

    C.  PLAINTIFFS RENEW THEIR REQUEST FOR JURISDICTIONAL DISCOVERY ........................................................................................6

II.    UPMC DOES NOT QUALIFY FOR FEDERAL OFFICER REMOVAL..........................7

    A.  UPMC'S FAILS TO RESOLVE THE CONSTITUTIONAL CONCERNS ...................7

    B.  UPMC IS NOT "ACTING UNDER" ANY FEDERAL OFFICER OR AGENCY WHEN IT UNLAWFULLY DISCLOSES PERSONALLY IDENTIFIABLE PATIENT DATA AND COMMUNICATIONS TO THIRD PARTIES FOR MARKETING PURPOSES ..................................................................... 8

    C.  UPMC IS NOT ACTING UNDER "COLOR OF LAW"................................................11

    D.  UPMC DOES NOT PRESENT ANY COLORABLE FEDERAL DEFENSE...........13

CONCLUSION.................................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Ass'n of Philadelphia,*
790 F.3d 457 (3d Cir. 2015).................................................................9, 11, 13

*Bennett v. Bd. of Comm'rs for E. Jefferson Levee Dist.,*
2007 WL 2571942 (E.D. La. Aug. 31, 2007) ...........................................6

*County of San Mateo v. Chevron Corp.,*
Case No. 18-15499 (9th Cir. May 26, 2020) ............................................1

*Doe v. Delie,*
257 F.3d 309 (3d Cir. 2001).....................................................................7

*Doe v. Virginia Mason,*
2020 WL 1983046 (Wash. Super. King Cty.)................................. 11, 14

*Draper v. Center for Organ Recovery and Education,*
2010 WL 1444860 (W.D. Pa. Apr. 8, 2010) ............................................8

*Ellis v. Montgomery Cty.,*
267 F. Supp. 3d 510 (E.D. Pa. 2017) ......................................................2

*Ennis v. Smith,*
55 U.S. 400 (1852) ...................................................................................3

*Healy v. Beer Inst., Inc.,*
491 U.S. 324 (1989) ...............................................................................14

*Hollinger v. Home State Mut. Ins. Co.,*
654 F.3d 564 (5th Cir. 2011) ...................................................................6

*Hood v. Gilster-Mary Lee Corp.,*
785 F.3d 263 (8th Cir. 2015) ...................................................................7

*In re Sprint Nextel Corp.,*
593 F.3d 669 (7th Cir. 2010) .........................................................2, 3, 6, 7

*Mason v. Lockwood, Andrews & Newnam, P.C.,*
842 F.3d 383 (6th Cir. 2016) ................................................................2, 3

*Mays v. City of Flint, Mich.,*
871 F.3d 437 (6th Cir. 2017) ...................................................................8

*Mesa v. California,*
489 U.S. 121 (1989) ...............................................................................13

*Mondragon v. Capital One Auto Fin.,*
736 F.3d 880 (9th Cir. 2013) ...................................................................2

*Myrick v. WellPoint, Inc.,*
764 F.3d 662 (7th Cir. 2014) ...................................................................7

*N.L.R.B. v. Amax Coal Co., a Div. of Amax,*
453 U.S. 322 (1981) .................................................................................3

*Ohio State Chiropractic Ass'n v. Humana Health Plan Inc.,*
647 Fed. App'x 619 (6th Cir. 2016) ........................................................8

*Papp v. Fore-Kast Sales Co., Inc.,*
842 F.3d 805 (3d Cir. 2016)................................................................9, 14

*Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.,*
485 F.3d 793 (5th Cir. 2007) ................................................................5, 6

*Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.,*
485 F.3d 804 (5th Cir. 2007) ...................................................................6

*Smith v. Facebook,*
745 Fed. App'x 8 (9th Cir. 2018) ..................................................................................... 14
*Tennessee v. Davis,*
100 U.S. 257 (1880) ........................................................................................................ 13
*Watson v. Phillip Morris Cos., Inc.,*
551 U.S. 142 (2007) ..................................................................................................... 8, 11

## **Statutes**

42 U.S.C. § 300jj-31(a)(1), (6) ............................................................................................ 12

## **Rules**

Fed R. Civ. P. 23(a)(1) ........................................................................................................ 3

## **Regulations**

45 C.F.R. § 160.203(b) ........................................................................................................ 15
75 FR 44368 (Jul. 28, 2010) ................................................................................................ 12
77 FR 54002 (Sept. 4, 2012) ......................................................................................... 10, 12
80 FR 62793 (Oct. 16, 2015) ......................................................................................... 10, 12
Promoting Interoperability Final Rulemaking, 83 FR 41640 (Aug. 17, 2018) ...................... 10

UPMC's Response does nothing to dispel the essential facts relevant to Plaintiffs' Motion to Remand ("Motion"). On its Class Action Fairness Act ("CAFA") argument, UPMC fails to present any evidence to rebut the presumption that residents are considered citizens for purposes of CAFA's exceptions. The simple fact is that this is exactly the type of case the exception is intended to encompass: the only defendant is a citizen of Pennsylvania[1]; the proposed class consists only Pennsylvania residents; all relevant activity took place in Pennsylvania, where UPMC runs its web-properties; and, all claims arise under Pennsylvania law. UPMC's claims to the contrary are factually unsupported and without merit.

Likewise, UPMC's "Federal Officer" removal argument is a frivolous house of cards. Having retreated from its contention that the federal government "specifically directs UPMC…" to engage in the misconduct at issue (Notice of Removal ("Notice") [Dkt. 1] at 1), UPMC now claims that in making unlawful disclosures for marketing purposes it was "'acting under' HHS, CMS, and ONC" by taking "discretionary actions for the purpose of meeting" the federal government's Promoting Interoperability program.[2] UPMC Br. [Dkt. 22] at 9. But as set forth in Plaintiffs' opening brief, UPMC's assertion is illusory. None of UPMC's cited federal authorities impose a duty to disclose personally identifiable patient data and communications to third parties. To the contrary, each reaffirms that UPMC's primary duty is to protect the privacy of patient data. UPMC's response wholly fails to address this reality, and its attempt to contort broad federal considerations to fit its own self-serving goals should be rejected. Remand should be granted.

## I. PLAINTIFFS ARE ENTITLED TO REMAND UNDER THE HOME STATE EXCEPTION TO CAFA

UPMC argues: (1) that Plaintiffs are not entitled to a presumption that residents are considered citizens for purposes of CAFA's exceptions; and, (2) that Plaintiffs' evidence is insufficient to meet the burden of showing that at least two-thirds of the proposed class are citizens of Pennsylvania.

---

[1] UPMC notes that it operates some facilities outside Pennsylvania but based on listings placed on its own web-property, 98.6 percent of UPMC facilities are in Pennsylvania – or 278 of 282 facilities listed.

[2] The Ninth Circuit held as recently as today that "[n]or does a person's 'compliance with the law (or acquiescence to an order)' amount to 'acting under,' a federal officer who is giving an order or enforcing the law." *County of San Mateo v. Chevron Corp.*, Case No. 18-15499 (9th Cir. May 26, 2020).

UPMC's arguments should be rejected. And, in the event the Court is inclined to follow the Seventh Circuit's approach in *In re Sprint Nextel, infra*, Plaintiffs are entitled to an opportunity to perform a survey of putative class members in accordance with that approach.

### A. PLAINTIFFS ARE ENTITLED TO A REBUTTABLE PRESUMPTION OF CITIZENSHIP

According to UPMC, Plaintiffs are not entitled to the rebuttable presumption that residents are considered citizens for purposes of CAFA exceptions.[3] UPMC argues that this is because a putative class may only invoke the home state exception by either explicitly restricting the class definition to "citizens" or by bringing only class actions on behalf of classes for which they are somehow able to identify and survey all class members for citizenship before filing an initial complaint. But UPMC's restrictive reading effectively nullifies the purpose and intent of the "home state" exception, which is to permit state courts to continue to adjudicate class actions brought and defended by parties of the same state involving state law causes of action. For this reason,[4] recent authority from federal circuits have rejected UPMC's interpretation and courts in the Third Circuit have tellingly chosen to follow this recent approach.[5] This Court should follow the reasoning of courts in its sister district.

Moreover, legislative history and intent supports application of the presumption of citizenship. Notably, legislative committees used the terms "citizenship" and "residency" interchangeably when describing how CAFA would affect the ability of state courts to hear class actions of local nexus. The Senate Committee on the Judiciary understood the Act would "leave[] in state court: . . . class actions in which all the plaintiffs and defendants are *residents* of the same state [and] class actions brought

---

[3] Plaintiffs have raised both the home state and local controversy exceptions but generally refer specifically to the home state exception despite their arguments applying equally to both. *See also* Plaintiffs' Opening Brief [Dkt. 12] at 7 n. 3.

[4] Given the Court's standing order regarding replies, Plaintiffs will not address UPMC's varied criticisms of *Mason v. Lockwood, Andrews & Newnam, P.C.,* 842 F.3d 383, 390 (6th Cir. 2016), as those are largely and aptly addressed in *Mason* or in *Ellis v. Montgomery Cty.,* 267 F. Supp. 3d 510, 512 (E.D. Pa. 2017). Plaintiffs limit this reply to the concerns which those courts did not address directly or fully.

[5] UPMC erroneously cites *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880 (9th Cir. 2013), for the proposition that the Ninth Circuit "refus[ed] to presume citizenship based on residency." UPMC Br. [Dkt. 22] at 19. But the *Mondragon* Court did not say this at all. Rather, the court explicitly *refused* to make this finding, stating "[i]t does not appear that this circuit has yet adopted this presumption. Because the issue is not squarely presented by this appeal, we decline to reach that issue here." *Id.* at 886.

against a company in its home state, in which 2/3 or more of the class members are also *residents*," among others. S. REP. 109-14, 27, 2005 U.S.C.C.A.N. 3, 27 (emphasis added). In fact, the Committee explicitly confirmed that it did not intend federal courts to gain jurisdiction over cases, as here, involving same-state residents brought in their common state court:

> "Local Controversy Exception" is intended to ensure that state courts can continue to adjudicate truly local controversies in which some of the defendants are out-of-state corporations. In order to fall within the Local Controversy Exception, a class action must meet the following four criteria: (1) The class must be primarily local, meaning that more than two-thirds of class members must be **residents** of the state in which the action was filed; (2) at least one real defendant (whose alleged conduct is central to the class's claims and from whom the class seeks significant relief) must also be local; (3) the "principal injuries" caused by the defendants" conduct must have occurred in the state where the suit was brought; and (4) no other similar class actions have been filed against any of the defendants (by the same or other proposed classes) in the preceding three years. If all of these four criteria are satisfied, the case will not be subject to federal jurisdiction under the bill.

*Id.* at 28-29 (emphasis added). It is unsurprising that the Committee treated residents as presumptive citizens; courts have been doing so since 1852, when the Supreme Court held, "[w]here a person lives, is taken *primâ facie* to be his domcil[e], until other facts establish the contrary. . .." *Ennis v. Smith*, 55 U.S. 400, 423 (1852).; *see also* N.*L.R.B. v. Amax Coal Co., a Div. of Amax*, 453 U.S. 322, 329 (1981) ("Where Congress uses terms that have accumulated settled meaning under either equity or the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.") (*quoted in Mason*, 842 F.3d at 390).

Even divorced from history or intent, it makes practical sense to honor the residency-domicile presumption because to do otherwise would create an insurmountable and unintended bar to filing (and retaining) state-centric class actions in state court. Under UPMC's restrictive interpretation, Plaintiffs have two choices in pursuing a class of residents: it must narrowly define the class such that the class members are somehow identifiable pre-suit and then have them each complete affidavits of citizenship – which the Seventh Circuit recognized was "infeasible" (*In re Sprint Nextel Corp.,* 593 F.3d 669, 675 (7th Cir. 2010)) – or, Plaintiffs could file suit on behalf of a complete resident class of their fellow residents and conduct a sample survey of putative class members if and when defendant chose to seek CAFA jurisdiction (as Plaintiffs have requested here; *see* Section I.C.).

The first choice would clearly frustrate the goal of Rule 23 of bringing an action on behalf of a class that is "so numerous that joinder of all members is impracticable." Fed R. Civ. P. 23(a)(1). If the class is small enough that the putative class members are capable of being identified pre-suit in order to complete a citizenship survey then the "class" would also necessarily not be so numerous that joinder would be impracticable.[6] This leaves Plaintiffs with a final option (which is solely of UPMC's election): pursue relief on behalf of residents in state court and run a costly citizenship survey if defendant chooses to remove the case under CAFA.[7] While Plaintiffs are willing to run such a survey, the extraordinary cost and delay in doing so (only to prove the inevitable conclusion that residents who receive medical care in their home state are, indeed, citizens of that same state) would not serve judicial economy. This is all the more true where UPMC has submitted *no evidence* to the contrary which is applicable to one-third of the putative class.

The Court should thus forgo the need for a costly and unnecessary survey and follow the Sixth Circuit's *Mason* approach, granting Plaintiffs the benefit of a rebuttable presumption of citizenship.

**B.** **PLAINTIFFS' EVIDENCE PROVES THAT TWO-THIRDS OF THE PENNSYLVANIA-RESIDENT CLASS ARE PENNSYLVANIA CITIZENS**

Plaintiffs' evidence in the form of U.S. census data ("Census Data") addresses the categories of class members *UPMC identified* as being potential non-citizen residents and reveals UPMC's position for the factually unsupported hypothetical that it is. The Census Data demonstrates that the cumulative total of potential non-citizen resident categories was only eight percent of Pennsylvania's population. While UPMC balks at Plaintiffs' use of state-wide population data, it was UPMC that chose the denominator, publicly casting itself as a statewide entity, touting that it has "facilities across

---

[6] Particularly, in consumer class actions pre-suit identification and survey is simply not possible. Plaintiffs have no way to know who defendant injured without the assistance of defendant.

[7] This is not an inevitability. Of the similar cases brought by Plaintiffs' counsel, UPMC was the *only* defendant that attempted to remove the case to federal court under CAFA (or any other theory).

Pennsylvania"[8] and that it provides "a coordinated system of care across Pennsylvania and beyond"[9]:



UPMC further claims it is "[t]he largest nongovernmental employer in Pennsylvania" and "integrates 89,000 employees, 40 hospitals, 700 doctors' offices and outpatient sites, and more than 3.7 million-member Insurance Services Division, the largest medical insurer in western Pennsylvania."[10] It cannot credibly claim that statewide data is the incorrect denominator for a statewide healthcare provider.

Furthermore, UPMC does not suggest that its resident-patient population is unrepresentative of the state's demographics (to say nothing of evidence to substantiate such a claim). In fact, UPMC's marketing refutes this idea, claiming it provides care for a broad range of individuals, including "7 out of 10 Medicaid patients in Allegheny County; 7 out of 10 babies born to low-income families in the Harrisburg region; 8 out of 10 pediatric patients from low-income families in Erie, Lawrence, McKean, Mercer, and Venango counties; 8 out of 10 patients with behavioral health needs in Bedford and Blair counties; 7 out of 10 seniors in Clinton, Lycoming, Potter, and Tioga counties[.]"[11] This, along with Plaintiffs' Census Data, sufficiently demonstrates that it is more likely than not that more than two-thirds of the putative resident-class are Pennsylvania citizens.

UPMC's reliance on *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793 (5th Cir. 2007) ("*Preston I*") is misplaced. *First, Preston I* did not hold that census data may not generally be used as evidentiary support for the home state exception. Rather, it found that reliance on census data is inappropriate only in the highly specific circumstance where Hurricane Katrina caused the putative

[8] https://www.upmc.com/services/wound-healing
[9] https://campaigns.upmc.com/UPMC/2017_Year_In_Review/#20
[10] https://www.upmc.com/about/why-upmc
[11] https://www.upmc.com/-/media/upmc/about/community-commitment/2019-community-commitment/documents/community-benefits-fast-facts.pdf?la=en

class members to experience a "mass exodus [which] essentially put domicile of putative class members at issue," thereby rendering the census data potentially unsuitable for determining citizenship. *Bennett v. Bd. of Comm'rs for E. Jefferson Levee Dist.*, No. CIV.A. 07-3130, 2007 WL 2571942, at *5 (E.D. La. Aug. 31, 2007) (finding "no analogous mass exodus of Jefferson Parish as in Orleans Parish because of Hurricane Katrina and, therefore, it is reasonable to infer that greater than two-thirds of the putative class members are citizens of Louisiana…"). Indeed, other subsequent cases not occasioned by incidents of "mass exodus," the Fifth Circuit relied on census data and remanded the case. *Hollinger v. Home State Mut. Ins. Co.,* 654 F.3d 564, 571 (5th Cir. 2011) ("United States census data is an appropriate and frequent subject of judicial notice." *citing Bennet*, 2007 WL 2571942, at *4-5).

*Second,* the district court decision granting remand which was affirmed by the Fifth Circuit in *Preston I*'s companion case, *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.,* 485 F.3d 804, 814 (5th Cir. 2007) ("*Preston II*"), permitted the plaintiffs to discover "patient information which will permit these parties to identify the patients who suffered personal injuries, including death, during the relevant period; these patients' addresses and phone numbers; as well as next of kin" as well as "an affidavit of a [hospital] representative attesting to the percentage of patients at issue, both deceased and living, with Louisiana addresses and percentage of those with addresses outside Louisiana." The Court found that the evidentiary record afforded by this discovery demonstrated that the case "symbolize[d] a quintessential example of Congress' intent to carve-out exceptions to CAFA's expansive grant of federal jurisdiction when our courts confront a truly localized controversy. *Id.* at 823. Plaintiffs have requested below similar jurisdictional discovery to that permitted in *Preston II*.

### C.    Plaintiffs Renew Their Request for Jurisdictional Discovery

While UPMC urges the Court to adopt the Seventh Circuit's approach to the rebuttable presumption of citizenship, it fails to acknowledge that this approach includes both a benefit and a burden. In *In re Sprint Nextel Corp.,* the court remanded the case to the district court to give the plaintiffs the opportunity to create an evidentiary record to support its motion to remand. In doing so, the court recognized that "it would be infeasible to document each class member's citizenship individually, but the district court could have relied on evidence going to the citizenship of a representative sample.

This evidence might have included affidavits or survey responses in which putative class members reveal whether they intend to remain in Kansas indefinitely." 593 F. 3d at 675; *see also Myrick v. WellPoint, Inc.*, 764 F.3d 662, 665 (7th Cir. 2014). Courts that have followed the Seventh Circuit's approach have adopted the *entire approach*, permitting surveys of putative class members. *E.g, Hood v. Gilster-Mary Lee Corp.*, 785 F.3d 263, 266 (8th Cir. 2015). Therefore, should the Court be inclined to follow the Seventh Circuit, Plaintiffs have a right to survey the putative class to determine citizenship.

## II. UPMC DOES NOT QUALIFY FOR FEDERAL OFFICER REMOVAL

### A. UPMC'S FAILS TO RESOLVE THE CONSTITUTIONAL CONCERNS

The Third Circuit has "long recognized the right to privacy in one's medical information," *Doe v. Delie*, 257 F.3d 309, 315-16 (3d Cir. 2001). UPMC originally (and falsely) argued that the federal government "specifically directs" UPMC to engage in the conduct here. Notice [Dkt. 1] at 1. Plaintiffs responded that such an argument – that the federal government compelled a health care provider to disclose personally identifiable patient data and communications – would raise grave constitutional issues about the Promoting Interoperability program that the Court should sidestep under the constitutional avoidance doctrine. In response, UPMC retreated, and now argues that whether its actions were "required" is not material. UPMC Br. [Dkt. 22] at 9. Instead, UPMC claims it is "still 'acting under' HHS, CMS, and ONC when it takes discretionary actions" for what UPMC-alone deems to be the purpose and duty of a federal officer and program. *Id.* But UPMC's attempted pivot does not solve the constitutional avoidance problem because UPMC is still asserting that it acted with the authority of a federal officer to disclose personally identifiable patient data and communications to third parties without patient authorization. Whether the disclosures are at the "specific direction" of a federal officer or taken by UPMC's self-serving claim that it was acting with the authority of a federal officer, if accepted, UPMC's argument would raise the grave constitutional concern that the federal government is facilitating the disclosure of personally identifiable patient data and communications. UPMC is wrong and the Court should avoid the question.

### B. UPMC IS NOT "ACTING UNDER" ANY FEDERAL OFFICER OR AGENCY WHEN IT UNLAWFULLY DISCLOSES PERSONALLY IDENTIFIABLE PATIENT DATA AND COMMUNICATIONS TO THIRD PARTIES FOR MARKETING PURPOSES

UPMC mischaracterizes Plaintiffs' Motion. It is not just that UPMC is not acting *at the direction* of any federal officer or agency, which UPMC now concedes. It is also that UPMC is neither assisting nor helping to carry out any *federal supervisor's duties* or *tasks*, and the litigation is not *targeted at* the relationship between UPMC and HHS, CMS, or ONC.

*First*, *acting under* refers to a relationship "considered in relation to one holding a superior position or office" and "typically involves subjection, guidance, or control." *Watson v. Phillip Morris Cos., Inc.*, 551 U.S. 142, 145 (2007). *Watson* explains that there must be some actual delegation of federal authority to trigger removal. *Id.* at 156. In *Draper v. Center for Organ Recovery and Education* the Court explained, "[T]o trigger the right to remove a case, the private entity must actually assist, or help to carry out, the duties of the federal supervisor." No. 2:10-CV-181, 2010 WL 1444860, at *4 (W.D. Pa. Apr. 8, 2010). Where there is no "delegation of authority," removal is not justified. *Id.* For example, in *Ohio State Chiropractic Ass'n v. Humana Health Plan Inc.*, 647 Fed. App'x 619 (6th Cir. 2016), the defendant invoked federal officer removal based on its relationship with CMS as a Medicare Advantage organization ("MAO"). The Sixth Circuit rejected this argument, explaining that defendant's relationship with CMS did not "establish the type of formal delegation that falls within § 1442(a)." *Id.* at 622, *citing Watson*, 551 U.S. at 153. "Normally, when federal agencies delegate legal authority to private entities, they do so expressly." *Id.* at 623. But no such delegation exists for MAOs. There is no CMS regulation or statement that MAOs can "act on its behalf." *Id.* Instead, "MAOs have an arms-length relationship with CMS." *Id.* Accordingly, federal officer removal did not apply. *Id.* at 624; *see also Mays v. City of Flint, Mich.*, 871 F.3d 437, 445-446 (6th Cir. 2017) (following *Ohio State Chiropractic Ass'n* and noting that "the absence of language allowing a private entity to act on the federal government's behalf weighs against allowing federal-officer removal").

Here, UPMC has not shown evidence of any delegation of authority from any federal officer to UPMC regarding the use of marketing tools that disclose personally identifiable patient information to third parties. Nor has UPMC shown any evidence of a delegation of authority relating to the

MyUPMC patient portal. This patient portal is UPMC's own property, not the property of HHS, CMS, or ONC. As it relates to this case, HHS, CMS, and ONC are not subjecting, guiding, or controlling UPMC's disclosures of patient data and communications.

*Second*, UPMC claims that the specific nature of the underlying claims is not relevant. UPMC Br. [Dkt. 22] at 10. But UPMC's argument is directly contrary to binding Third Circuit precedent. In *Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805 (3d Cir. 2016) and *Def. Ass'n of Philadelphia*, 790 F.3d 457 (3d Cir. 2015), the Third Circuit made clear that, if the acts at issue were not done at the specific bequest of a federal officer or agency, then removal was only appropriate where "the allegations are *directed at* the relationship between the defendant and the federal officer or agency." *Papp* at 812-13; *Def. Ass'n* at 468, 470. UPMC fails to address the fact that the underlying Complaint is in no way *directed at* UPMC's relationship with these federal agencies. Instead, UPMC's Notice concedes that, at best, the complaint only "implicate[s] how UPMC Providers" execute the Promoting Interoperability program. Notice [Dkt. 1] at ¶ 14. But the underlying case neither implicates nor targets UPMC's relationship with HHS, CMS, or ONC. Moreover, the Promoting Interoperability program has nothing to do with the underlying case. UPMC is not even a federal contractor as it relates to this case and participation in Medicaid/Medicare is not conditioned upon the existence of a patient portal.

*Third*, to assist or help carry out a federal supervisor's duties or tasks, a removing party must at least demonstrate the specific federal officer *duties* or *tasks* that they claim to be assisting or carrying out. In *Papp*, the duty and task were part of an affirmative contract for construction of military aircraft. In *Def. Ass'n*, the removing defendant was a non-profit agency created by federal law. Here, UPMC has failed to identify any similar relationship. There is no federal duty to encourage patient portal participation at all, and there is certainly no duty to encourage patient portal participation through the use of computer source code that causes unauthorized disclosures of personally identifiable patient data and communications to Facebook and Google.[12] Nor has UPMC identified any federal task which

---

[12] The agencies have the opposite duty and task: to protect patient privacy. For example, ONC explains, "Protecting patients' privacy and securing their health information stored in an EHR is a core requirement of the Medicare and Medicaid EHR Incentive Programs." ONC *Guide to Privacy and Security of Electronic Health Information,* Dkt. 12-6 at p. 9. CMS has stated that Protecting Patient Privacy

it is assisting or helping to carry out. The federal program that UPMC refers to is called the Promoting Interoperability program, and its focus is on, not surprisingly, promoting the interoperability of electronic health record systems amongst providers first and patients second. The hospital program in which UPMC participates does not include any measure requiring patient involvement. Instead, all a hospital like UPMC is required to do to meet incentive requirements is to make its patient portal available for patients to use.

*Fourth*, Plaintiffs have not conceded that "the federal government is doing the same things alleged against UPMC here." UPMC Br. [Dkt. 22] at 8. Plaintiffs did not mention these UPMC allegations about the actions of federal agencies at federal websites because they are not relevant here. While "Uncle Sam made me do it" is relevant to federal officer removal; "Uncle Sam did it too" is not. Regardless, Uncle Sam is *not* doing the same things alleged against UPMC here and is not subject to the same standards as UPMC for the allegations UPMC makes.[13]

*Fifth*, these are not "standard practices in healthcare for achieving meaningful use." UPMC Br. [Dkt. 22] at 7. Disclosing patient personally identifiable data and patient portal log-in information to Facebook and Google is not a "standard practice." And it has nothing to do with "achieving meaningful use." UPMC's Response notes that Plaintiffs' counsel has brought similar claims across the country. This is correct. There are current pending cases in Washington, California, Massachusetts, Maryland, and here. Not a single defendant in those cases has claimed that these third-party marketing

---

is "Objective 1" because it "is essential to all other aspects of meaningful use." CMS, *Stage 2 Final Rulemaking*, 77 FR 54002 (Sept. 4, 2012); *see also Stages 2 and 3 Final Rulemaking*, 80 FR 62793 (Oct. 16, 2015); *Promoting Interoperability Final Rulemaking*, 83 FR 41640 (Aug. 17, 2018).

[13] If anything, UPMC's presentation of the federal government's privacy policies illustrates UPMC's own privacy shortcomings. *Compare* UPMC's Exhibits 2K [Dkt. 1-3 at p. 166] and 2L [Dkt. 1-3 at pg. 178] *with* UPMC's various privacy statements. The Medicare statements are detailed, and specifically mention Facebook, Google, and others. By contrast, UPMC's statements promise, *inter alia*, that UPMC "will obtain [patient] written permission before using or sharing your health information" with any third party for marketing purposes; "will not sell [patient] identifiable health information to others without authorization;" "keep[s] the personal information of [its] patients and members in the strictest confidence;" and, will "not disclose identifiable personal information to other organizations." CAC [Dkt. 1-2] at 2, ¶ 7. In any case, UPMC has not presented any evidence of what actually occurs on any specific Medicare website. As UPMC's broken privacy promises show, website privacy policies are not always accurate; some policies under-disclose, while others may over-disclose and not engage in any or all of the activity mentioned.

tools are used to assist or help a federal agency in any duty or task – because they are not. In fact, Washington defendant, Virginia Mason, removed the Facebook Pixel and largely changed its privacy practices within three days of the trial court rejecting its motion to dismiss (*Doe v. Virginia Mason*, 2020 WL 1983046 (Wash. Super. King Cty.) (Feb. 12, 2020)); California defendant, Sutter Health, removed the vast majority of third-party tools on its website after the Plaintiffs' filed suit, including removing the Facebook Pixel; and, Massachusetts defendant hospitals made significant changes to their online privacy statements in response to Plaintiffs' suit and the trial court's inquiry on Plaintiffs' motion for preliminary injunction. *See* Declaration of Richard M. Smith, attached hereto as Exhibit "A." These post-suit actions in Washington, California, and Massachusetts show that, in reality, a hospital's online marketing practices and intentional patient privacy violations have nothing at all to do with the federal government's Promoting Interoperability program.

### C. UPMC is Not Acting Under "Color of Law"

The "color of federal office" element requires "a connection or association between the act in question and the federal office." *Def. Ass'n,* 790 F.3d. at 471. But such a connection or association for federal officer removal only applies to private persons "*authorized*" to "*lawfully* assist" the federal officer or agency in carrying out the official duty in question. *Watson,* 551 U.S. at 151. If a private person claiming federal officer status is acting without authorization or failing to follow the lawful requirements of the federal officer pursuant to the alleged duty or task, then they are not acting under "color of law," but instead are acting unlawfully and without authorization.

For example, in *Papp*, the defendant, Boeing, removed an asbestos failure-to-warn case under the federal officer removal statute where the federal officer was silent about duties relating to the presence of asbestos in the airplane manufacturing process. Imagine if, instead, the federal officer had mandated Boeing either, "In constructing the plane, you must warn about the dangers of asbestos" or, "You may not use asbestos in the construction of this plane." In that scenario, Boeing's federal officer removal argument would not be available because violating those terms of the federal officer would makes it actions unauthorized, unlawful, and outside the "color of law" required for removal.

In its Response, UPMC argues that Plaintiffs' underlying case "puts at issue whether actions taken in the course of a federal program violate federal law[.]" UPMC Br. [Dkt. 22] at 12. UPMC is wrong. The Complaint cites HIPAA for two general purposes: (1) as one of several bases for a patient's reasonable expectation of privacy from their healthcare provider; and (2) because CMS has determined the factual matter that the type of data at issue here (IP addresses, cookies, and unique device identifiers) are personally identifiable. Plaintiffs' underlying case is not based on HIPAA violations. But UPMC's removal and reliance on federal officer status does put HIPAA, the Promoting Interoperability program, and the general duties and requirements of HHS, CMS, and ONC into issue for this Motion.

Here, the federal officers on which UPMC relies all require hospitals like UPMC to protect patient privacy – especially in the Promoting Interoperability program. A primary purpose of the ONC is to "ensure[] that patients' individually identifiable health information is secure and protected." Barnes Decl. [Dkt. 12-1] at ¶ 5 (*citing* 69 FR 24059, EO 13335 § 2(f), at 703). The HITECH Act directed HHS to support "health information technology architecture" that is "secure," "private," and "promot[es] … technologies and best practices that enhance the protection of health information." 42 U.S.C. § 300jj-31(a)(1), (6). HHS, CMS, and ONC have been clear that the Promoting Interoperability program does not supplant HIPAA or pre-empt any state privacy law. For example:

- "Protecting the privacy and security of health care information, and ensuring the safe use of health technology, have long been core responsibilities of the federal government." ONC, *Federal Health Information Technology Plan 2011-2015*, UPMC Ex. 2C [Dkt. 1-3 at pg. 42] at 28.
- "No requirement of meaningful use supersedes any Federal, State, or local law regarding the privacy of a person's health information." CMS, *Stage 2 Final Rule*, 77 FR 54008 (Sept. 4, 2012).
- "Compliance with HIPAA privacy and security rules is required for all covered entities, regardless of whether or not they participate in the EHR incentive programs." CMS, *Stage 1 Final Rule*, 75 FR 44368 (Jul. 28, 2010).
- "Providers must continue to comply with all applicable requirements under the HIPAA Privacy Rule." CMS, *Stage 2 Final Rule*, 77 FR 53998 (Sept. 4, 2012) and CMS, *Stages 2 and 3 Final Rule*, 80 FR 62832 (Oct. 16, 2015).
- "Objective 1" of the Promoting Interoperability program is to "Protect Patient Health Information" because "safeguarding ePHI … is essential to all other aspects of meaningful use." CMS, *Stages 2 and 3 Final Rule*, 80 FR 62793, (Oct. 16, 2015).
- "Protecting patients' privacy and securing their health information stored in an EHR is a core component of the Medicare and Medicaid EHR Incentive Programs. … Your practice … is

responsible for taking the steps needed to protect the confidentiality, integrity, and availability of health information in your EHR." ONC, Dkt. 12-6 at 9.

- There is no exception to the protection of patient personally identifiable information because CMS "believe[s] it is of the utmost importance for all providers to protect ePHI." CMS, *Stages 2 and 3 Final Rule*, 80 FR 62793 at 62794.

Further, as set forth Plaintiffs' Opening Memorandum, UPMC's conduct violates HIPAA.[14]

UPMC is correct to state that a defendant need not "win his case before he can have it removed." UPMC Br. [Dkt. 22] at 12. But a removing defendant does need to prove that he is acting under a federal officer or agency under color of law before he can have his case removed. By looking at HIPAA, the Court is not delving into the merits of Plaintiffs' underlying claims, but instead the merits of UPMC's invocation of federal officer removal.

Put simply, to act "under color of law," a private person cannot break the law, regulations, and core objectives of the federal agencies that the person cites for federal officer removal. When a person violates a federal law and agency rules and core objectives through "discretionary" decisions (as admitted by UPMC here), they remove themselves from status as a federal officer.

### D.     UPMC Does Not Present Any *Colorable* Federal Defense

Relying on *Def. Ass'n*, UPMC argues that federal officer removal does not require it to present a "complete defense." UPMC Br. [Dkt. 22] at 13, *citing Def. Ass'n*, 790 F.3d at 472-73 (*quoting Mesa v. California*, 489 U.S. 121, 126-27 (1989)). UPMC misconstrues *Def. Ass'n*. In *Def. Ass'n*, the Third Circuit explained, "Since at least 1880, the Supreme Court has required that federal officer removal be allowed if, and only if, 'it appears that a Federal question or a claim to a Federal right is raised in the case, and must be decided therein.'" *Def. Ass'n* at 473, *citing Mesa* at 126-27 (*quoting Tennessee v. Davis*, 100 U.S. 257, 262 (1880)). This "if and only if" requirement "assures that federal courts have Article III jurisdiction over federal officer removal cases." *Id.* Under this precedent there is no right to federal officer removal unless the federal question or federal right is raised "and must be decided therein." If the claimed federal question or federal right would not grant the removing party complete relief, then it need not be decided therein, and removal is not appropriate.[15]

---

[14] *See* Dkt. 12 at n. 5, *see also*, Barnes Decl. [Dkt. 12-1] ¶¶ 43-49.
[15] The federal defense offered in *Papp* was complete for Boeing, the removing party. The defense need not be complete for all defendants in a case.

Here, UPMC posits three claimed defenses: (1) HIPAA; (2) Dormant Commerce Clause; and (3) pre-emption. None are federal, colorable, and complete.

*First*, UPMC's purported HIPAA defense is not a defense to the underlying action at all. Plaintiffs' underlying claims neither rise nor fall based on HIPAA. Instead, Plaintiffs' claims are for violations of Pennsylvania state laws and causes of action – none of which include HIPAA violation as an element or defense. As explained above and in Plaintiffs' Motion (Dkt. 12 at pg. 16, n. 5), UPMC is violating HIPAA, which is relevant here because it shows that UPMC is not *acting under* the agencies that enforce HIPAA. But whether or not UPMC is violating or complying with HIPAA is not dispositive to any of Plaintiffs' claims.[16] Finally, as presented by UPMC, whether IP addresses, cookies, and unique device identifiers are personally identifiable is a question of fact, not a federal defense.

*Second*, UPMC's purported Dormant Commerce Clause defense is not colorable. It is not "legitimate" and "reasonably asserted, given the facts presented and the current law." *Papp*, 842 F.3d at 815. The Dormant Commerce Clause only applies where a state attempts to regulate "commerce that takes place wholly outside of the State's borders." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989). UPMC's Response speaks of "assuming some aspect" of each UPMC patient's activity taking place inside Pennsylvania. UPMC Br. at 14. But there is no assumption required. UPMC admits that it runs its web-properties out of Pittsburgh, and it has embraced Pennsylvania law "without regard to conflict of laws principles" and "regardless of where" any person accessing the websites is located. *See* Compl. Ex. 3 [Dkt. 1-2 at 121] at 1 ("UPMC controls our websites and apps from our offices in Pittsburgh, Pennsylvania. By accessing our websites and apps, you agree that your access and use are governed by

---

[16] Moreover, *Smith v. Facebook*, 745 Fed. App'x 8 (9th Cir. 2018), is inapposite because the question in that case was whether HIPAA applied to non-patient communications with non-HIPAA covered entities for which they were not patients and that did not disclose patient status. *See Doe v. Virginia Mason*, 2020 WL 1983046 (Wash. Super. King Cty.) (Feb. 12, 2020) ("[T]he Court does not find *Smith* … to be dispositive. … [T]he potential disclosure of a specific patient's logging-in to the private portal, possibly coupled with searches of medical providers and conditions immediately prior to the log-in, state a claim to a violation of [the Washington Health Care Information Act]."

and will be interpreted in accordance with … the laws of the Commonwealth of Pennsylvania…").[17] Having made those concessions, UPMC cannot now claim that such laws are unconstitutional.

The breathtaking reach of UPMC's assertion must also be noted. Plaintiffs' underlying action involves six counts: (1) breach of provider-patient confidentiality; (2) violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act; (3) violation of the Pennsylvania Unfair Trade and Business Practices Act; (4) identity theft; (5) negligent maintenance of patient data; and, (6) intrusion upon seclusion. These Pennsylvania statutes and causes of action are not unique. Similar statutes and causes of action exist in every state. If UPMC's Dormant Commerce Clause argument is colorable, it calls the constitutionality of literally thousands of state laws and causes of action into question. An ultimate decision in UPMC's favor would represent a drastic attack on the very concept of federalism that has no basis in law, and thus, is not colorable.

*Third*, UPMC's pre-emption arguments are not colorable. HIPAA does not pre-empt state privacy laws that are more protective of patient privacy. 45 C.F.R. § 160.203(b). And, in the context of the Promoting Interoperability program, CMS has consistently explained, "No requirement of meaningful use supersedes any Federal, State, or local law regarding the privacy of a person's health information" and "[c]ompliance with HIPAA privacy and security rules is required for all covered entities, regardless of whether or not they participate in the EHR incentive program." Where the relevant federal agency disclaims a private party's pre-emption argument, the disclaimed pre-emption argument is not a colorable federal defense upon which that party can rely for federal officer removal.

## CONCLUSION

For all of these reasons, this matter should be remanded to the Court of Common Pleas of Allegheny County, Pennsylvania.

Dated: May 26, 2020

---

[17] The current UPMC website informs visitors: "UPMC controls our websites from our offices in Pittsburgh, Pennsylvania, USA. By accessing our websites, regardless of where you are located, you agree that the statutes and laws of the Commonwealth of Pennsylvania will apply to all matters regarding the use of our websites." https://www.upmc.com/patients-visitors/privacy-info/terms-of-use. Whether this or any other document is an enforceable contract is a separate question.

/s/ James C. Shah

James C. Shah (ID No. 80337)
Nathan Zipperian (ID No. 202585)
Michael Ols (ID No. 326144)
SHEPHERD, FINKELMAN, MILLER & SHAH,
LLP
1845 Walnut Street, Suite 806
Philadelphia, PA
Telephone: 610.891.9880
Facsimile: 866.300.7367
jshah@sfmslaw.com
nzipperian@sfmslaw.com
mols@sfmslaw.com

Jay Barnes
Mitchell Breit
SIMMONS HANLY CONROY
112 Madison Avenue
New York, NY 10016-7416
Telephone: 212.784.6400
Facsimile: 212.213.5949
jaybarnes@simmonsfirm.com
mbreit@simmonsfirm.com

Amy Gunn
Elizabeth Lenivy
THE SIMON LAW FIRM, P.C.
800 Market Street, Suite 1700
St. Louis, MO 63101
Telephone: 314.241.2929
agunn@simonlawpc.com
elenivy@smonlawpc.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 26, 2020, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ James C. Shah
James C. Shah
Shepherd, Finkelman, Miller & Shah, LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: 610.891.9880
Facsimile: 866.300.7367
Email: jshah@sfmslaw.com