# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE I and JANE DOE II, on behalf of themselves and all others similarly situated, | Case No. 2:20-cv-00359-MJH |
| *Plaintiffs*, | Hon. Marilyn J. Horan |
| v. | Electronically Filed |
| UPMC, a Pennsylvania Nonprofit, Non-Stock Corporation, | |
| *Defendant*. | |

## UPMC'S SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Rebekah B. Kcehowski (Pa. 90219)
Leon F. DeJulius, Jr. (Pa. 90383)
Anderson T. Bailey (Pa. 206485)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219-2514
Telephone: 412.394.7935
Facsimile: 412.394.7959
rbkcehowski@jonesday.com
lfdejulius@jonesday.com
atbailey@jonesday.com

*Counsel for UPMC*

Nothing in Plaintiffs' May 26, 2020 reply briefs (ECF #27, 27-1 and 28-1) supports either remanding this case or the other relief Plaintiffs seek. Instead, the replies make a host of new arguments, misrepresent the Notice of Removal, ignore relevant law and facts, and include a new request for discovery. While UPMC's Notice of Removal and Opposition to Remand refute many of the errors in Plaintiffs' briefing, UPMC respectfully submits this Sur-Reply to address Plaintiffs' new arguments and discovery request.

**I.   Plaintiffs Cannot Defeat Federal Officer Removal.**

   **A.   The Notice, Law, And Evidence Show UPMC Is "Acting Under" HHS.**

For the first time, Plaintiffs argue for remand because there purportedly has been no "delegation of authority" to UPMC. Reply at 8. Plaintiffs also contend UPMC has not "identified any federal task which it is assisting or helping to carry out." *Id*. at 9-10. These claims are simply false.

The Notice is clear on these points. The HITECH Act "delegated to HHS the authority to set criteria for … meaningful use." Notice ¶ 25. HHS in turn "delegates to" healthcare providers "the responsibility for executing the Meaningful Use Program." *Id*. ¶ 49. The "techniques identified in the Complaint" are how UPMC "carries forth its delegated authority." *Id*. ¶ 50. UPMC is assisting the federal government with "the development of a nationwide infrastructure for health IT and EHR" and "increas[ing] patient engagement and the use of EHR." *Id*. ¶¶ 5, 33.

Plaintiffs also ignore the underlying law and facts. The HITECH Act directed HHS to create a "nationwide" health "information technology architecture" and expand providers' use of EHR. 42 U.S.C. § 300jj-31. The Meaningful Use program is the "centerpiece" of HHS' strategy for achieving this goal. 2011 Plan at 23 (ECF #1-3 at 65 of 272). CMS sets voluntary program benchmarks for meaningful EHR use and pays healthcare providers to meet those benchmarks. *See, e.g.*, 42 U.S.C. § 1395w-4; 80 Fed. Reg. 62815-18; 75 Fed. Reg. 44321-22. UPMC uses

cookies and website analytics to meet those benchmarks and provide HHS with the expanded EHR use it seeks. K. Powers Decl. ¶ 5 (ECF #1-4); K. Scott Decl. ¶ 6 (ECF #1-5). This authority and evidence—and precedent under Section 1442(a)(1)—refute the conclusory and misleading statements in Plaintiffs' replies. *See also Bell v. Thornburg*, 743 F.3d 84, 88-91 (5th Cir. 2014) (private citizen who chose to fire employee "acting under" federal officer); *In re Commonwealth's Motion to Appoint*, 790 F.3d 457, 468-70 (3d Cir. 2015) ("*Defender Association*") (private nonprofit created to represent defendants in federal proceedings was "acting under" when appearing in state proceedings); *Goncalves v. Rady Children's Hosp.*, 865 F.3d 1237, 1247 (9th Cir. 2017) (defendant was assisting with the government's "special interest in ensuring that [insurance] carriers pursue subrogation claims").

Plaintiffs, also for the first time, cite an unpublished Sixth Circuit decision and analogize UPMC's actions in the Meaningful Use program to those of insurers acting as "MAOs" in the Medicare Advantage program. Reply at 8. While the Sixth Circuit denied removal, several courts have disagreed and held that MAOs *can* remove under Section 1442(a)(1). *See, e.g.*, *Escarcega v. Verdugo Vista Operating Co., LP*, 2020 WL 1703181, at *6-7 (C.D. Cal. Apr. 8, 2020) (surveying case law and allowing removal). The courts allowing removal criticize the Sixth Circuit's reasoning as contrary to the Supreme Court's mandate "that the federal officer removal statute must be liberally construed." *Id*. at *6; *see also Body & Mind Acupuncture v. Humana Health Plan, Inc.*, 2017 WL 653270, at *5 (N.D.W. Va. Feb. 16, 2017). Moreover, the Sixth Circuit's reasoning that MAOs do not act "on … behalf" of a federal officer and have an "arm-length relationship" with the government, Reply at 8, is equally true of the grant recipient in *Defender Association* and the contractor in *Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805 (3d Cir. 2016)—both cases in which the Third Circuit reversed an order to remand. What matters

is whether UPMC is assisting the government, and the Notice of Removal, supporting authority, and exhibits leave no doubt that it is. *See supra*.

**B.     The Claims Are Directed At, And Relate To, UPMC's Meaningful Use.**

Plaintiffs argue, misleadingly, that UPMC has "retreated" or "pivot[ed]" from its "false[]" claim "that the federal government 'specifically directs UPMC…' to engage in the misconduct at issue." Reply at 1, 7 (quoting Notice at 1). Wrong. UPMC's Notice of Removal states that the government "specifically directs UPMC to achieve increasing benchmarks in the use of interoperable health technology." Notice at 1. Not only has UPMC not "retreated," but Plaintiffs' own evidence proves the averment in UPMC's Notice: CMS "set staged requirements for [healthcare] providers to demonstrate progressively more integrated use of EHRs and receive incentive payments for such use." *See* Pls.' Ex. 5 at 32 (ECF #12-6 at 33 of 50).

Plaintiffs are also wrong to suggest that federal officer removal applies only when the government "specifically directs" the exact conduct at issue. That was not the case in *Bell* or *Goncalves*—cases the Reply does not distinguish—or in *Defender Association*. UPMC utilizes techniques that Plaintiffs allege to be unlawful in assisting the federal government's goal to expand meaningful use of EHR and create a nationwide, interoperable health IT infrastructure. *Id*. ¶¶ 25-43. That is a sufficiently "close" relationship to remove under Section 1442(a)(1). *Def. Ass'n*, 790 F.3d at 469, 472 (defendant's appearances in PCRA proceedings facilitated its federal habeas cases); *Papp*, 842 F.3d at 813 (allegations were "directed at actions" taken "while working under a federal contract to produce an item the government needed").[1]

---

[1] Plaintiffs also repeatedly argue that UPMC "concedes" this case only "implicate[s]" how it meets Meaningful Use criteria and is not "directed at" its relationship with HHS. Reply at 8, 9. That is not correct; Plaintiffs again misread the Notice. *See, e.g.*, Notice ¶ 14 ("The allegations here squarely target the relationship between the UPMC Providers and the federal government").

Indeed, throughout their Reply, Plaintiffs frame each issue in improperly narrow terms. They argue there can be no "connection or association" between the acts complained of and the federal government because UPMC is acting illegally. Reply at 11-3. They contend removal requires "a duty to disclose personally identifiable patient data" or federal officers "controlling UPMC's disclosures of patient data and communications." *Id*. at 1, 9. None of that is consistent with the law. If allegations of illegality were enough to defeat removal, Section 1442(a)(1) would cease to have meaning; every lawsuit alleges unlawful conduct. And, Supreme Court and Third Circuit precedent that Plaintiffs do not acknowledge directs the Court to construe the Notice in UPMC's favor and credit UPMC's theory of the case. *See, e.g.*, Opp'n at 2-3.

**C.     The Parties' Disagreement Over HIPAA Demonstrates a Federal Question.**

Finally, the Reply settles in favor of removal any doubt about whether this case "raises a federal question," as needed to satisfy the federal defense criterion. *Def. Ass'n*, 790 F.3d at 473. Plaintiffs acknowledge that the Complaint relies on federal law to allege that IP addresses and cookies "are personally identifiable." Reply at 11. Removal under Section 1442(a)(1) is appropriate so long as the parties contest "a duty under federal law," *Def. Ass'n*, 790 F.3d at 473, and here, "***Federal Law***" is literally the first basis Plaintiffs allege for "UPMC's Duties of Confidentiality." Compl. at 6 (emphasis in original). That, by itself, is sufficient for removal. *Def. Ass'n*, 790 F.3d at 474 (removing where case involved "interpretation of federal statutes").

**II.     The Court Has Jurisdiction Under CAFA.**

UPMC's Opposition to remand put forth evidence establishing diversity under Section 1332(d)(2) of the Class Action Fairness Act ("CAFA"). Plaintiffs' Reply ignores that evidence. The Court, therefore, has jurisdiction under CAFA, making removal proper and requiring denial of the Motion to Remand. None of the new arguments in the Reply help Plaintiffs meet their admitted burden under CAFA's exceptions.

4

### A. Plaintiffs Still Fail to Meet Their Burden Under CAFA's Exceptions.

In moving to remand, Plaintiffs did not tell the Court that the majority of federal courts have rejected a presumption of citizenship based on residence alone. Confronted with that case law by UPMC, the Reply offers four new arguments, none of which has merit.

*First*, Plaintiffs offer the conclusory argument that "recent authority from federal circuits have rejected UPMC's interpretation and courts in the Third Circuit have tellingly chosen to follow this recent approach." Reply at 2. Plaintiffs, however, cite no "recent authority" beyond *Mason* and *Ellis*, which subsequent courts reject. *See, e.g.*, *Hargett v. RevClaims, LLC*, 854 F.3d 962, 966 n.2 (8th Cir. 2017); *Nichols v. Chesapeake Operating, LLC*, 718 F. App'x 736, 741 (10th Cir. 2018), *cert. denied* 139 S. Ct. 788. Nor do Plaintiffs acknowledge the contrary authority from within this Circuit or the Third Circuit decisions in tension with their proposed presumption. *See* Opp'n at 19-21. The Court should not follow Plaintiffs' eyes-closed charge into a wall of contrary precedent.

*Second*, Plaintiffs resort to misrepresenting the precedent, suggesting the decision in *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 881-82 (9th Cir. 2013), did not really decide this issue. Reply at 2 n.5. *Mondragon* squarely rejected the presumption Plaintiffs seek here: "[O]ur holding … requir[es] evidentiary proof" of citizenship because residence alone "does not mean that person is a citizen of California." *Mondragon*, 736 F.3d at 884. Plaintiffs' footnote quote discusses a different issue regarding presumptions of continuing domicile. *See id.* at 886.

*Third*, Plaintiffs cite to use of the term "residents" in CAFA's legislative history. Reply at 2-3. When interpreting a statute, however, the Court must "look to the text of a statute to determine congressional intent, and look to legislative history only if the text is ambiguous." *In re Mehta*, 310 F.3d 308, 311 (3d Cir. 2002). There is no ambiguity here. Interpreting "citizen"

as used in Section 1332(d) to mean "resident" would *create* ambiguity in conflict with the Third Circuit's interpretation of "citizen" as used in Section 1332(a). *See* Opp'n at 20.

Regardless, the legislative history favors UPMC. In language Plaintiffs do not quote, the Senate majority expressly noted that "for purposes of the citizenship element," CAFA "does not alter current law regarding how the citizenship of a person is determined." S. REP. 109-14, 36; *see also id.* at 61 (CAFA "allows more class action cases … to be removed to federal court" and "does not change substantive law"). The minority also confirmed that "conflat[ing] the concepts of citizenship and residence" was "erroneous[]" and that "the touchstone" for CAFA's exception "is citizenship not residence." *Id*. at 84. Representatives likewise confirmed CAFA "does not alter current law" regarding citizenship analysis. 151 Cong. Rec. H723-01, at H729. Plaintiffs attempt to manufacture a controversy about interpretation where none exists.

*Finally*, Plaintiffs complain that the residency-domicile presumption has to apply, because otherwise there would be an "insurmountable and unintended bar to filing (and retaining) state-centric class actions in state court." Reply at 3-4. Wrong again. *Plaintiffs chose not to limit their proposed class to "citizens." See Hargett*, 854 F.3d at 966 (noting plaintiff could have alleged "a class explicitly limited to local citizens"). That was their prerogative, but they cannot have a multi-state class *and* avoid their burden of proof under Section 1332(d)(4).

**B.     Plaintiffs' Census Data Says Nothing About the Putative Class.**

In defense of their census data, Plaintiffs offer conclusions disconnected from the facts. They argue the data "is completely in line with the definition of the putative class." Notice Reply at 4 n.1. It clearly is not. The census data show how many of Pennsylvania's total residents in 2018 were students, employed with the armed forces, or enrolled in TRICARE. *See* Pls.' Exs. 1-3 (ECF #12-2, 12-3, and 12-4). The putative class is neither all Pennsylvania residents nor Pennsylvania students and service members. Plaintiffs try to confuse the issue by

pointing out that UPMC providers are located in various counties in the Commonwealth. Reply at 5. Not all Pennsylvania residents are UPMC patients; there are many other providers statewide. Nor are all UPMC patients putative class members; only those who use UPMC websites are part of the putative class. The only thing the census data show is that the number of Pennsylvania residents who might have qualified as class members had this case been filed two years ago is between zero and 12,398,819, the total population of the Commonwealth. *See* Pls.' Ex. 3 (ECF #12-4 at 2 of 2).

In trying to prove that two-thirds of putative class members are Pennsylvania citizens, Plaintiffs argue that *UPMC* somehow "chose the denominator." Reply at 4-5. The denominator, however, was set by (i) *Congress*, which uses the total "members of all proposed plaintiff classes in the aggregate," 28 U.S.C. § 1332(d)(4); and (ii) *Plaintiffs*, who defined the putative class as all *patients* who *reside* in Pennsylvania and accessed a UPMC website, Compl. ¶ 367. Plaintiffs' data say nothing about how many people meet those criteria or what their citizenship is.

Plaintiffs argue their math does not have to be "'precise.'" Notice Reply at 2. But Plaintiffs at least have to look for an answer to the right problem. Plaintiffs' burden is to fill in two sides of a division problem, the total number of putative class members and the total number of non-Pennsylvania citizens in the putative class. Both sides here remain blank.[2]

### III.  Plaintiffs' New Proposed Discovery Would Not Help Resolve This Dispute.

Plaintiffs' replies propose new discovery in the form of a "survey of putative class members." Reply at 2. The Court should deny that as well. Plaintiffs' new request has nothing

---

[2] Notably, Plaintiffs tied their original discovery requests to the same groups on which they present census data, students and service members. *See* Discovery Br. at 3 (ECF #14). The replies abandon that "targeted discovery," *id*., in favor of an undefined and open-ended request to "survey the putative class." Reply at 7. The reason why Plaintiffs' new proposed discovery does not align with the census data is that the latter says nothing about the putative class.

to do with federal officer removal under Section 1442(a)(1). The Court can and should deny remand based on the federal officer statute, and that moots any request for CAFA discovery.

CAFA also does not "entitle[] Plaintiffs to conduct a survey." Discovery Reply at 1. In Plaintiffs' own authority, the Seventh Circuit—four years after that court discussed the possibility of surveys in *In re Sprint Nextel Corp.*, 593 F.3d 669 (7th Cir. 2010)—affirmed the denial of remand because "citizenship differs from residence" and "plaintiffs did not offer any evidence" to meet their burden of proof under CAFA's exceptions. *Myrick v. Wellpoint, Inc.*, 764 F.3d 662, 664, 665 (7th Cir. 2014). The *Myrick* court did not remand the matter for discovery on the issue. *See also Dicuio v. Brother Int'l Corp.*, 2011 WL 5557528, at *5-6 (D.N.J. Nov. 15, 2011) (denying CAFA discovery).

Regardless, the newly proposed "survey" is not consistent with CAFA. The court in *Dicuio* faced a similar situation, including a "one-sentence discovery request in Plaintiff's reply brief [that] does not state with reasonably particularity what sort of discovery Plaintiff would need" and "smacks of a fishing expedition." 2011 WL 5557528, at *6. The court denied the request pursuant to Third Circuit precedent "that jurisdictional discovery may not be used for that purpose, and in light of the suggestion by CAFA's drafters that broad, undefined discovery periods are not favored." *Id*. The plaintiff in *Roth v. CHA Hollywood Med. Ctr., L.P.* also failed to specify the "type of discovery she would conduct," and with "over 1,000 putative class members," any discovery would "inevitably be 'substantial' and 'burdensome.'" 2013 WL 12303362, at *4 (C.D. Cal. Sept. 5, 2013).

In addition, the proposed discovery will not help fill in the blanks under Section 1332(d)(4). Any "survey" would presumably require UPMC first to provide a list of potential class members. That is itself improper under CAFA. *See Dicuio*, 2011 WL 5557528, at *6. But

8

there is also no way to identify all members of the putative class, which includes any resident patient who ever used a UPMC website. Compl. ¶ 367. As anyone who has visited UPMC.com knows, users don't have to register, and there is no reasonable way to identify, much less locate and interview, even a representative sample of those users. Any survey would still leave material gaps in the Court's view of the putative class.

Plaintiffs' proposal is also highly invasive. Despite their own allegations about unlawfully disclosing IP addresses, Plaintiffs ask the Court to order that UPMC disclose names and contact information for untold thousands of individuals so that they can then be interviewed about their relationship with UPMC; how they communicate with their doctors; where they bank, vote, and worship; and their intentions for the future. *See, e.g.*, *Schwartz v. Comcast Corp.*, 2006 WL 487915, at *5 (E.D. Pa. Feb. 28, 2006) (listing factors for citizenship). Vague references to a "survey" are fraught with potential disputes and privacy concerns.[3]

CAFA was passed to encourage "'the exercise of federal jurisdiction over class actions,'" not substantial, burdensome discovery. *Dicuio*, 2011 WL 5557528, at *6 (citation omitted). Plaintiffs' difficulty in meeting their burden under Section 1332(d)(4) is of their own making in defining the putative class. That does not compel burdensome, intrusive, and inconclusive discovery with months of litigation; it compels denying discovery and remand. *See Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1166 (11th Cir. 2006).

---

[3] For example, Plaintiffs cite *Payton v. Entergy Corp.*, 2013 WL 5722712, at *10 (E.D. La. Oct. 21, 2013), a case that actually illustrates how CAFA discovery should not proceed. Discovery in Payton lasted four months, there was expert testimony on survey design, there was related motion practice under *Daubert*, and resolution of the issue ultimately took nearly a year following the opening of discovery. *See id.*

9

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Remand, Motion for Judicial Notice, and Motion for Discovery.

Dated: June 9, 2020

Respectfully submitted,

 /s/  *Rebekah B. Kcehowski*
Rebekah B. Kcehowski (Pa. 90219)
Leon F. DeJulius, Jr. (Pa. 90383)
Anderson T. Bailey (Pa. 206485)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219-2514
Telephone: 412.394.7935
Facsimile: 412.394.7959
rbkcehowski@jonesday.com
lfdejulius@jonesday.com
atbailey@jonesday.com

*Counsel for UPMC*

# CERTIFICATE OF SERVICE

I hereby certify that this 9th day of June, 2020, I caused Defendant UPMC's Sur-Reply In Opposition To Plaintiffs' Motion To Remand to be filed over the Court's electronic filing system, which will cause service to be made on all counsel of record.

    /s/ *Rebekah B. Kcehowski*
Rebekah B. Kcehowski (Pa. 90219)
*Counsel for UPMC*