IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE I and JANE DOE II, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>   vs.<br><br>UPMC,<br><br>        Defendant. | 2:20-cv-359<br><br>Judge Marilyn J. Horan |

## OPINION AND ORDER

      Plaintiffs filed the present class action against Defendant UPMC in the Court of Common Pleas of Allegheny County, Pennsylvania, seeking redress under Pennsylvania law for UPMC's alleged disclosure of Plaintiffs' personally identifiable information to third parties for internet marketing purposes without Plaintiffs' knowledge or authorization.  (ECF No. 1-2).  UPMC removed the matter to federal court, citing two bases: federal officer removal jurisdiction, under 28 U.S.C. § 1442(a)(1), and class action diversity jurisdiction, pursuant to the Class Action Fairness Act, at 28 U.S.C. § 1332(d).  (ECF No. 1).  Plaintiffs sought remand of the case back to state court.  (ECF No. 11).  In an Opinion and Order dated July 31, 2020, the Court found that federal officer removal jurisdiction exists in this case and denied Plaintiffs' Motion to Remand.  (ECF No. 41).  Plaintiffs now ask the Court to certify the July 31, 2020 Opinion and Order for interlocutory appeal to the Third Circuit Court of Appeals, pursuant to 28 U.S.C. § 1292(b).  (ECF No. 43).  The parties have briefed the issues, (ECF Nos. 44, 48, 49), and the Motion is now ripe for decision.

      For the following reasons, Plaintiffs' Motion to Certify Ruling for Interlocutory Appeal will be denied.

1

**I. Background**

Plaintiffs bring this action individually and on behalf of a class of plaintiffs consisting of "[a]ll Pennsylvania residents who are, or were, patients of UPMC or any of its affiliates, and who used UPMC's web properties, including, but not limited to, UPMC.com and the Patient Portal at myupmc.upmc.com." (ECF No. 1-2, at ¶ 367). According to the Complaint, UPMC "encourages patients to exchange communications" through its website and patient portal "to search for a doctor, learn more about their conditions and treatments, access medical records and test results, and make appointments." *Id.* at ¶ 5. UPMC then re-directs certain personally identifiable information and patient communication content from its website and patient portal to third parties, such Facebook and Google, for marketing purposes without patients' consent. *Id.* at ¶¶ 10–13. Plaintiffs contend that through this conduct, UPMC fails to uphold its obligations and promises to protect patients' privacy. *Id.* at ¶¶ 3, 6–11. As a result, Plaintiffs bring state-law claims for breach of provider-patient confidentiality; violation of Pennsylvania's Wiretapping and Electronic Surveillance Control Act, 18 P.S. § 5701 *et seq.*; violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.*; identity theft, in violation of 40 P.S. § 4120; negligence; and intrusion upon seclusion.

UPMC removed the matter to federal court primarily on the basis of the federal officer removal jurisdiction, found at 28 U.S.C. § 1442. (ECF No. 1). UPMC also argued that removal was proper under the Class Action Fairness Act (CAFA), at 28 U.S.C. § 1332(d), in that the amount in controversy exceeds $5,000,000 and minimal diversity exists. *Id.* As to federal office removal, UPMC stated that when it engaged in the complained-of conduct, it was acting under the Department of Health and Human Services (DHHS), the Centers for Medicare and Medicaid Services (CMS), and the Office of the National Coordinator for Health Information Technology,

2

to implement DHHS's voluntary electronic health records incentive program, known as the EHR Incentive Program or, more commonly, the Meaningful Use Program. *Id.* at ¶¶ 16–24. Through the Meaningful Use Program, the federal government makes incentive payments to healthcare providers who increase their use of, as well as patient engagement with, electronic health records, or "EHR." *Id.* at ¶ 14. This program came about as a result of the federal government's goal of a "'nationwide implementation of interoperable health information technology in both the public and private health care sectors.'" *Id.* at ¶ 18 (quoting Exec. Order 13,335, 69 Fed. Reg. 24,059 (Apr. 27, 2004)). According to UPMC, Plaintiffs' claims "effectively ask[] a court to intervene in the operation of a federal program and hold that the federal government, UPMC, and most other healthcare systems are all violating state law." *Id.* at 1–2. As such, UPMC argued, this matter belongs in federal court. *Id.* Plaintiffs disagreed. (ECF Nos. 11, 12).

After briefing and oral argument on the issues, the Court ruled in favor of UPMC, holding that federal officer removal jurisdiction exists in this case. (ECF No. 41). Plaintiffs now ask the Court to certify its July 31, 2020 Opinion and Order denying their Motion to Remand for interlocutory appeal before the Third Circuit. (ECF No. 43).

**II. Discussion**

Interlocutory appeals generally are disfavored, as piecemeal litigation "undermines efficient judicial administration and encroaches upon the prerogatives of district court judges, who play a special role in managing ongoing litigation." *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 106 (2009) (internal quotations omitted). But 28 U.S.C. § 1292(b) allows a district court to certify for appellate review certain interlocutory orders. For such a certification to be proper, the order at issue "must (1) involve a 'controlling question of law,' (2) offer 'substantial ground for difference of opinion' as to its correctness, and (3) if immediately appealed, 'materially advance

the ultimate termination of the litigation.'" *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) (quoting 28 U.S.C. § 1292(b)). However, even if the movant establishes all three criteria, "[t]he decision to grant certification 'is wholly within the discretion of the courts.'" *Shevlin v. Phoenix Life Ins. Co.*, 2015 U.S. Dist. LEXIS 7797, at *13 (D.N.J. Jan. 23, 2015) (quoting *Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976)). In the present matter, Plaintiffs argue that each of these elements is met and that the Court's July 31, 2020 Opinion and Order is of the kind appropriate for interlocutory review. (ECF No. 44, at 6).

*A. Controlling question of law*

As to the first element, a controlling question of law is one that is "serious to the conduct of the litigation, either practically or legally." *Id.* at 755. The clearest example of a controlling question of law is "one which would result in a reversal of a judgment after final hearing." *Id.* Subject matter jurisdiction is often a controlling question of law. *Beazer East, Inc. v. Mead Corp.*, 2006 U.S. Dist. LEXIS 74743, at *5 (W.D. Pa. Oct. 12, 2006).

Plaintiffs contend that this element is met, as federal officer removal is an issue of subject matter jurisdiction. (ECF No. 44, at 7). UPMC responds that a question of law is not controlling "where alternative grounds would still support the order." (ECF No. 48, at 9). UPMC points out that in addition to federal officer removal, it removed this matter on the basis of CAFA. *Id.* However, this Court did not reach the issue of whether removal was proper under CAFA, nor will the Court now forecast what a decision on that issue might be. (ECF No. 41, at 16). It is enough that a reversal of this Court's decision will have serious practical ramifications for the litigation of this case, particularly if this case moves forward into discovery and receives an ultimate decision on the merits prior to appeal. The Court's July 31, 2020 Opinion and Order thus involves a controlling question of law.

*B. Substantial ground for difference of opinion*

Regarding the second element, a "party's mere disagreement with the district court's ruling . . . is not a substantial ground for difference of opinion for Section 1292(b) purposes." *Shevlin*, 2015 U.S. Dist. LEXIS 7797, at *13. Rather, the requisite difference of opinion "must arise out of genuine doubt as to the correct legal standard," such as a doubt "stem[ming] from conflicting precedent, the absence of controlling law on a particular issue, or novel and complex issues of statutory interpretation." *Id.* (internal quotations omitted). An issue of first impression, by itself, is insufficient to establish this element. *In re Imperial Towing Inc.*, 2012 U.S. Dist. LEXIS 176519, at *6 (W.D. Pa. Dec. 13, 2012); *see also Shaup v. Frederickson*, 1998 U.S. Dist. LEXIS 18532, at *6 (E.D. Pa. Nov. 16, 1998) ("If questions of first impression alone were sufficient to warrant certification for an immediate appeal, our Court of Appeals would be besieged with piecemeal interlocutory appeals.").

Under the federal officer removal statute, a defendant establishes that the court has subject matter jurisdiction by showing, among other things, that the plaintiff's claims are based upon the defendant's conduct "acting under" the United States, its agencies, or its officers. *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Phila.* (*Defender Ass'n*), 790 F.3d 457, 467 (3d Cir. 2015). As this Court explained in the July 31, 2020 Opinion and Order, "[t]he words 'acting under' describe 'the triggering relationship between a private entity and a federal officer.'" *Id.* at 468 (quoting *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 149 (2007)). The "triggering relationship" encompasses a broad range of relationships, including, but not limited to, agent-principal, contract or payment, and employer-employee relationships. *Id.*; *Watson*, 551 U.S. at 156. Despite the broad nature of federal officer removal, however, a private entity's compliance or noncompliance with federal regulation—even

5

if the regulation is detailed and involves close supervision— "does not by itself [bring a party] within the scope of the statutory phrase 'acting under' a federal 'official.'" *Watson*, 551 U.S. at 153.  The key question in determining whether a private entity was "acting under" a federal agency or officer is whether the private entity's complained-of conduct "'involve[s] an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior.'"  *Defender Ass'n*, 790 F.3d at 468 (quoting *Watson*, 551 U.S. at 152).  This Court found that Plaintiffs' claims center on UPMC's voluntary participation in the Meaningful Use Program, which involves an effort to assist or help carry out the specific government objective of building a widely used, nationwide health IT infrastructure in exchange for incentive payments.  The Court also noted that the relationship between UPMC and the federal government is more like a government contractor relationship than it is like a regulator/regulated relationship.  This Court thus found that it has subject matter jurisdiction pursuant to the federal officer removal statute.

      Plaintiffs here contend that "substantial ground for difference of opinion" exists because neither the Third Circuit nor any other circuit courts have definitively addressed whether federal officer removal is appropriate "in the context presented in this case." (ECF No. 44, at 6).  They argue that the issue of whether UPMC was "acting under" the federal government is novel and complex, and as such "an authoritative opinion" from the Third Circuit "would not only be useful, but ultimately necessary to resolve . . . differing opinions." *Id.* at 6, 10.  But Plaintiffs offer no conflicting precedent or other court cases that were decided differently, and instead focus on what they deem the absence of controlling law on a novel and complex issue.  However, the Court finds that although the facts of this case may be novel or complex, the applicable law, while not entirely simple, is not so novel and complex as to warrant interlocutory appeal.  To the extent that the particular relationship between UPMC and the federal government

presents an issue of first impression, that by itself is not enough to certify the Court's Opinion and Order for interlocutory appeal.  Importantly, the Supreme Court and the Third Circuit have decided several cases which outline the parameters of federal officer removal jurisdiction.  Perhaps not every boundary has been delineated, but there is sufficient controlling authority to guide the Court's application of the law to the facts presented by this case.  Accordingly, Plaintiffs have not established that there is "substantial ground for difference of opinion" in relation to whether UPMC was "acting under" the federal government when it engaged in the complained-of conduct.

*C. Materially advance the ultimate termination of the litigation*

Lastly, the third element—whether an immediate appeal will materially advance the ultimate termination of the litigation—points to the main purpose of § 1292(b): institutional efficiency.  *Forsyth v. Kleindienst*, 599 F.2d 1203, 1208 (3d Cir. 1979).  Certification of interlocutory appeals is generally reserved for "exceptional cases where an intermediate appeal would avoid protracted and expensive litigation."  *Id.*  Accordingly, for the third element of § 1292(b), district courts generally look to whether the appeal "would (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly."  *Orson, Inc. v. Miramax Film Corp.*, 867 F. Supp. 319, 322 (E.D. Pa. 1994); *Shevlin v. Phoenix Life Ins. Co.*, 2015 U.S. Dist. LEXIS 7797, at *13 (D.N.J. Jan. 23, 2015).  A court's "key consideration" is in deciding whether to certify an order for appeal is whether the order at issue "truly implicates the policies favoring interlocutory appeal," *Katz*, 496 F.2d at 756, such as "the avoidance of wasted litigation time and expense."  *Segal v. Strausser Enters.*, 2019 U.S. Dist. LEXIS 184556, at *12 (E.D. Pa. Oct. 24, 2019) (citing *Katz*, 496 F.2d at 756).

Here, instead of materially advancing the end of this litigation, an immediate appeal of Plaintiffs' Motion to Remand would further drag out litigation. If this Court is ultimately found to not have subject matter jurisdiction under the federal officer removal statute or after a decision addressing jurisdiction under CAFA, only merits litigation would be re-tried in state court. Plaintiffs therefore have failed to establish the third element required by 28 U.S.C. § 1292(b).

### III. Conclusion

THEREFORE, based on the foregoing, Plaintiffs' Motion to Certify for Interlocutory Appeal is DENIED.

IT IS SO ORDERED.

DATE  September 25, 2020

Marilyn J. Horan
United States District Judge